**VERMONT SUPERIOR COURT**
**Chittenden Criminal Division**

(802) 651-1950(Voice)
(802) 651-1759(FAX)

Vermont Superior Court
Criminal Division
Costello Courthouse
32 Cherry Street, Suite 300
Burlington, VT
05401

DATE: 02/05/2020          IN RE: INCIDENT NUMBER: 20BU001685

## NOTICE TO LAW ENFORCEMENT OFFICERS REGARDING SEARCH WARRANTS

You have obtained a Search Warrant from the Superior Court, Chittenden Unit, signed by Judge Shafritz. This is a confidential document. Attached you have:

1. The original search warrant
2. A photocopy of the application for search warrant
3. A photocopy of the affidavit
4. A photocopy of any other attachments filed

If the issued warrant was for anything other than monitoring conversations, then you must file the following documents with this Court no later than FIVE business days after completion of the execution of this warrant unless judicial officer specifies otherwise:

1. The original search warrant including incident number
2. The original inventory/return of service

If the issued warrant was for monitoring a conversation, you must file the following documents within 90 days of completion of the execution of this warrant unless judicial officer specifies otherwise:

1. The original search warrant including incident number
2. The original inventory/return of service

Please file the above documents in a sealed envelope addressed to the Clerk of the Court clearly marked "CONFIDENTIAL."

A return of service must be filed whether or not evidence is seized.

If the warrant is not executed, you shall file a return with the Court within FIVE business days of the expiration of the warrant indicating that the warrant was not executed.

STATE OF VERMONT
CHITTENDEN COUNTY, ss.
20BU001685

### SEARCH WARRANT

TO: <u>**Detective D. Bowers,**</u> and any Vermont Law Enforcement Officer:

You are hereby commanded to search:

- **The residence of Ayub Mohamud (DOB:** ▓▓▓▓▓▓▓▓ **)** located at 220 Riverside Ave. Unit C8 in Burlington, VT for evidence of the crimes of Sale/Possession of Cocaine. The building is described as a grey colored multi-unit building with white colored trim on the exterior. The number "C 7-12" is affixed to the exterior of a common door, and inside that common door the number "C8" is affixed in grey colored lettering on the door of the residence. "C8" is the first door on the right after entering through two doors from the exterior. This Officer requests to search any locked/unlocked containers and/or safes located at 220 Riverside Ave. Unit C8, Burlington, VT, and the viewing of their contents. The authorization of video recordings, photographs, and audio recordings of/in the premises and any conversations that occur within the residence during the duration of the warrant execution.





For the following described property or objects:

1. **Any and all forms of cocaine/cocaine base**
2. **Any and all forms of drug paraphernalia to include packaging materials, scales and "user" paraphernalia associated with any and all forms of cocaine**
3. **Any and all papers, receipts, records, notes, to include phone books, address books, laptops, computers, iPods, tablets, and any cell phones.**
4. **Any and all forms of money or negotiable instruments or property used or amassed through the distribution of cocaine.**

And if such property or object be found there to seize it, prepare a written inventory of it, and bring it before the Superior Court of Vermont, Chittenden Criminal Division.

The applicant has probable cause to believe that such property or object will be found in such residence and will constitute:

### Evidence of the crime of Sale/Possession of Cocaine

serving this **KNOCK AND ANNOUNCE** warrant and making the search **Between the hours of 6AM and 10PM**, within **10** days from the date hereof, and if the property or object be found there, to seize it, prepare a written inventory of it, and bring such property or object before the Superior Court of Vermont, Chittenden Criminal Division.

This warrant is issued upon the basis of an affidavit and the finding of probable cause by me, filed with the clerk of that Unit.

**Dated at Burlington, County of Chittenden, on the** 5th **day of** February **, 2020.**

/JUDGE

00000057

STATE OF VERMONT
CHITTENDEN COUNTY, ss.
20BU001685

APPLICATION FOR SEARCH WARRANT WITH AFFIDAVIT
A. Application

<u>Detective D. Bowers and any Vermont Law Enforcement Officer</u> requests the <u>Honorable Court</u> to issue a warrant to search:

- **The residence of Ayub Mohamud (DOB:** ▮▮▮▮▮▮▮) **located at 220 Riverside Ave. Unit C8 in Burlington, VT for evidence of the crimes of Sale/Possession of Cocaine. The building is described as a grey colored multi-unit building with white colored trim on the exterior. The number "C 7-12" is affixed to the exterior of a common door, and inside that common door the number "C8" is affixed in grey colored lettering on the door of the residence. "C8" is the first door on the right after entering through two doors from the exterior. This Officer requests to search any locked/unlocked containers and/or safes located at 220 Riverside Ave. Unit C8, Burlington, VT, and the viewing of their contents. The authorization of video recordings, photographs, and audio recordings of/in the premises and any conversations that occur within the residence during the duration of the warrant execution.**





For the following described property or objects:

1. **Any and all forms of cocaine/cocaine base**
2. **Any and all forms of drug paraphernalia to include packaging materials, scales and "user" paraphernalia associated with any and all forms of cocaine**
3. **Any and all papers, receipts, records, notes, to include phone books, address books, laptops, computers, iPods, tablets, and any cell phones.**
4. **Any and all forms of money or negotiable instruments or property used or amassed through the distribution of cocaine.**

And if such property or object be found there to seize it, prepare a written inventory of it, and bring it before the Superior Court of Vermont, Chittenden Criminal Division.

The applicant has probable cause to believe that such property or object will be found in such residence and will constitute:

### Evidence of the crimes of Sale/Possession of Cocaine

For the purposes of establishing probable cause for the issuance of this warrant, there are attached hereto the following affidavit:

### A. Affidavit of Detective D. Bowers

<u>This application is executed by Detective D. Bowers</u> the 5th day of February 2020.

_____
Detective D. Bowers

00000059

STATE OF VERMONT
CHITTENDEN COUNTY, ss.
20BU001685

## SUPPORTING AFFIDAVIT FOR SEARCH WARRANT

**Detective D. Bowers,** Affiant, after being duly sworn, makes the following statement to establish that he had probable cause for the issuance of a search warrant:

The applicant has probable cause to believe that such property or object will be found in such residence and will constitute:

**Evidence of the crimes of Sale/Possession of Cocaine**

That the above-mentioned property or objects are located in the following:

**The residence of 220 Riverside Ave. Unit C8 in Burlington, VT.**

**And is now located in the above-described location, based upon the following facts:**

### INTRODUCTION AND OFFICER BACKGROUND

1. I am a full time certified Police Officer for the City of Burlington. I have been employed with the Burlington Police Department since July 2014. I was certified by the Vermont Criminal Justice Training Council as a full time Police Officer in November 2014. I am currently assigned to the Detective Services Bureau as a Drug Investigator. I have conducted or assisted in numerous drug investigations that have led to arrests and convictions in the Vermont Superior Court and in US Federal Court. During my assignment as a Police Officer with the Burlington Police Department, I was assigned to the Street Crimes Unit for approximately twelve months. Throughout my assignments, I have investigated or assisted with the investigation of numerous drugs, drug related devices/paraphernalia and drug related evidence. I have seized or participated in seizures of different quantities of illegal drugs, controlled substances, user paraphernalia and other assorted items, such as money and property related to or acquired through the drug trade. I have seized or participated in seizures of various types of illegal drugs/narcotics during these investigations to include, powder cocaine, crack cocaine, marijuana, heroin, fentanyl, methamphetamine, and numerous types of prescription medications. I have conducted or been involved in several drug investigations and from this experience I am familiar with the trends associated with the use and distribution of illegal drugs/controlled substances. I have also participated in specialized training in which the primary focus was proactive criminal drug enforcement provided by the Vermont Criminal Justice Training Council.

2. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other law enforcement Officers who have participated in the investigation; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation.

3. Based on my training, experience and discussion with other officers investigating similar crimes I know:

4. That it is common practice for persons involved in the illegal sales/trafficking of regulated drugs to use different vehicles to travel to locations where illegal drugs and/or regulated drugs are sold and to cause the transportation of these illegal and/or regulated drugs to locations where they will be re-distributed.

5. That it is common for persons involved in the sales/trafficking of illegal and/or regulated drugs to use personally owned vehicles, rented vehicles or vehicles owned by others to effectively transport these illegal and/or regulated drugs from one place to another and it is common for these persons to travel with others that knowingly assist with the transportation and trafficking of these illegal and/or regulated drugs. It is common for these persons to utilize other than personally owned vehicles (either rented or other privately owned) even when a personally owned vehicle is available in order to limit their exposure to law enforcement surveillance. It is also common that persons involved in the sales/trafficking of illegal and/or regulated drugs have others rent these vehicles for them. It is also common for these persons to transport these illegal and/or regulated drugs at all times of the day and night. It is also common for persons involved in the sales/trafficking of illegal and/or regulated drugs to stay in hotels or motels which they rent under false names or have someone else rent for them; they do this to limit their exposure to law enforcement surveillance.

6. It is also well recognized by law enforcement, as well as being my experience, that in the vast majority of cases involving the sale and distribution of illegal and/ or regulated drugs, the use of cellular telephones is an essential tool subjects utilize while conducting their illegal activities. The use of cellular telephones is increasingly more involved in the sale and distribution as they become more robust in their capabilities. Subjects will utilize every aspect of their cellular telephone's capabilities to further their drug trafficking activities to include maintaining a contact list in which many known drug users and associates are listed; these lists are frequently populated with false or street names. Those who use and sell illegal drugs use cellular telephones as a critical and essential tool to communicate in order to discuss and facilitate their activities. They utilize both phone calls and text messages and use an intricate and ever changing coded system to communicate. The complexity of their communication would make decoding and analyzing the meaning of such messages difficult or impossible for someone untrained in narcotics investigations. Furthermore, subjects that use and distribute illegal narcotics frequently take photographs of themselves and associates in which illegal drugs, paraphernalia, and large sums of currency are shown. Subjects who distribute narcotics make frequent trips to and from supply sources (i.e. cities known for distribution) and subsequently utilize their cell phone for directions and searching for routes and eating establishments. Due to the number of people and the complexity of their interactions, coupled with the fact that distributors are often time transient in their habitation, distributors will keep track of who they have dealt drugs to and who owes them money by utilizing text documents and memos incorporated into the cell phone. I also know:

7. That both small and large scale illegal drug and/or other controlled substance traffickers often maintain, on hand, large amounts of United States Currency in order to finance their ongoing drug business;

8. That illegal drug and/or other controlled substance traffickers maintain books, records, receipts, notes, ledgers, computer software, airline tickets, money orders, and other documents relating to the transportation, acquisition and distribution of controlled substances;

9. That the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the heroin,

cocaine base and/or other controlled substance and/or illegal drug traffickers have ready access to them;

10. That it is common for both small and large scale drug traffickers to secrete contraband, proceeds of drug sales, and records of transactions in secure locations within their residence and/or other residences either vacant or occupied by other members of the trafficking conspiracy (stash house) and/or their businesses to conceal them from law enforcement authorities;

11. That persons involved in both small and large scale drug sales/ trafficking conceal in their residences, stash houses and businesses caches of drugs, large amounts of currency, other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to the attainment and concealment of large sums of money acquired from engaging in narcotic trafficking activities; it is also common for these people to maintain and store these items in safes and or locked containers.

12. That heroin, cocaine base and/or illegal drug and/or controlled substance traffickers commonly maintain addresses or telephone numbers in books and documents which relate names, addresses and/or telephone numbers of their associates in the trafficking organization;

13. That drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product, and that the photographs are usually maintained at the residence and/or businesses of the traffickers.

14. That drug traffickers frequently maintain several cellular telephones and that contained in the cellular telephones are evidence of trafficking in the form of contact information, text messages indicating drug transactions, photographs taken with large sums of currency and/ or drugs and paraphernalia.

## INVESTIGATION

### COOPERATING SUBJECT

15. During the months of December 2019 and January 2020, Detective Tremblay and I spoke with a subject who was interested in providing information and cooperating with law enforcement. For ease of reading and confidentiality purposes this cooperating subject will be referred to as the pseudonym "CS" as well as the pronoun "it". The CS was advised if it provides any false information to law enforcement that it could face criminal charges. The subject entered into a Cooperating Subject agreement with the Burlington Police Department and agreed to provide active cooperation in exchange for consideration on potential criminal charges.

16. The CS has criminal convictions for the following offenses: Criminal Impersonation – 2nd Degree, Petit Larceny (3 Counts), Driving While Intoxicated – 1st Offense, Assault – 3rd Degree, Criminal Possession Marijuana – 4th: Aggregate weight more than 2 ounces, Assault – 3rd Degree, Assault – 3rd Degree: With intent to cause Physical Injury, Criminal Contempt – 2nd Degree, Criminal Mischief: Intent to damage property, and Criminal Contempt – 2nd: Disobey Court.

17. In December, 2019 the CS told investigators that it was in a position to purchase crack/cocaine from a male that it knew as "Jeff". The CS advised "Jeff" had various nicknames. The CS advised it did not know any legal name for "Jeff" and described him as a young black male that was heavyset and frequently drove a Honda sedan. CS provided a phone number for "Jeff" of **802-399-**

**8440.**

18. It should be noted that "Jeff" was later identified as Ayub Mohamud (DOB: ███████) through surveillance footage obtained by investigators during a controlled purchase. "Jeff" will be herein referred to as "Jeff", "Ayub", or "Ayub Mohamud".

### Controlled Purchase #1

19. On a known date during the week of January 19, 2020 the CS met with Detective Sergeant Nguyen and me at the Burlington Police Department and advised it was in a position to purchase crack cocaine from Ayub. The CS was searched prior to the drug transaction at which time it was found to have no illegal drugs, paraphernalia or large sums of money on its person. The CS was provided enough serialized US currency to complete the anticipated drug transaction.

20. At my direction, the CS contacted Ayub via voice calls and text messages to the phone number **802-399-8440** to arrange the drug transaction. Ayub agreed to meet the CS at a known location in Burlington, VT. Investigators established surveillance of the anticipated area where the drug transaction was expected to be conducted.

21. The CS was transported to the area by Detective Sergeant Nguyen and me. The CS exited the vehicle and walked to the anticipated meet location of the controlled purchase. The CS was observed by investigators as it traveled to the area of the anticipated meet location.

22. Investigators observed the CS arrive in the area of the meet location. A hand to hand drug transaction was conducted where the CS handed the known amount of US currency to Ayub and the transaction for crack cocaine was completed. The physical hand to hand transaction was not observed by investigators. The CS was monitored as it walked back to meet with Detective Sergeant Nguyen and me. Upon meeting with us, the CS handed me all of the suspected crack cocaine that it stated it purchased from Ayub.

23. Detective Sergeant Nguyen and I transported the CS to a known location. The CS was searched after the controlled purchase and was found to have no illegal drugs, paraphernalia or large sums of money.

24. Following the controlled purchase I conducted an audio recorded statement with the CS in regards to the drug transaction with Ayub ("Jeff"). The CS advised that it met with "Jeff" and it physically exchanged the known amount of provided US currency and received crack cocaine.

25. The suspected crack cocaine was field tested by me with a Sirchie Nark II Cocaine ID Swipe. The suspected crack cocaine tested presumptive positive for cocaine. The crack cocaine was tagged into evidence at the Burlington Police Department, tag number 67683.

### Controlled Purchase #2

26. On a known date during the week of January 26, 2020, the CS met with Detective Sergeant Nguyen and me at the Burlington Police Department and advised it was in a position to purchase crack cocaine from Ayub. The CS was searched prior to the drug transaction at which time it was found to have no illegal drugs, paraphernalia or large sums of money on its person. The CS was provided enough serialized US currency to complete the anticipated drug transaction.

27. At my direction, the CS contacted Ayub via voice calls and text messages to the phone number **802-399-8440** to arrange the drug transaction. Ayub agreed to meet the CS at a known location in Burlington, VT. Investigators established surveillance of the anticipated area where the drug transaction was expected to be conducted.

28. The CS was transported to the area by Detective Sergeant Nguyen and me. The CS exited the vehicle and walked to the anticipated meet location of the controlled purchase. The CS was observed by investigators as it traveled to the area of the anticipated meet location.

29. Investigators observed the CS arrive in the area of the meet location. Ayub was also observed with the CS at the meet location and was video recorded by investigators. A hand to hand transaction was conducted where the CS exchanged a known amount of US currency for crack cocaine from Ayub. The physical hand to hand transaction was not observed by investigators. The CS was monitored as it walked back to meet with Detective Sergeant Nguyen and me. Upon meeting with us, the CS handed me all of the suspected crack cocaine that it stated it purchased from Ayub.

30. Detective Sergeant Nguyen and I transported the CS to a known location. The CS was searched after the controlled purchase and was found to have no illegal drugs, paraphernalia or large sums of money.

31. Following the controlled purchase I conducted an audio recorded statement with the CS in regards to the drug transaction with Ayub ("Jeff"). The CS advised that it met with "Jeff" and it physically exchanged the known amount of provided US currency for the crack cocaine.

32. The suspected crack cocaine was field tested by me with a Sirchie Nark II Cocaine ID Swipe. The suspected crack cocaine tested presumptive positive for cocaine. The crack cocaine was tagged into evidence at the Burlington Police Department, tag number 67727.

33. As noted in paragraph 29, video footage of "Jeff" (Ayub) was obtained by investigators during controlled purchase #2 between "Jeff" (Ayub) and the CS which positively confirmed the identity of "Jeff" as Ayub Mohamud (DOB: ▮▮▮▮).

34. It should be noted that Ayub was observed by Detective Vivori prior to the controlled purchase leaving the common doorway to 220 Riverside Ave. Building C, Units 7-12. Ayub was monitored by investigators and was observed by Detective Vivori entering the same doorway following the controlled purchase. It should be noted that Ayub has a listed address in police records and through the Vermont Department of Motor Vehicles of 220 Riverside Ave. Unit C8

in Burlington, VT. Based on the doorway utilized by Ayub before and after the controlled purchase, I believe he was travelling from and to his residence of 220 Riverside Avenue Unit C8.

35. Upon reviewing all of the video recordings obtained by investigators, I observed a male who I recognized as Ayub Mohamud based on comparison to existing police database photographs.

## OTHER RESIDENTS OF 220 RIVERSIDE AVE. Unit C8

36. Ayub is believed to reside with several of his family members at the residence 220 Riverside Ave. Unit C8. Residents believed to live at the address include his mother and two younger brothers. It is unknown if Ayub has his own bedroom or if he shares a bedroom with someone else.

## CONCLUSION

37. The investigation outlined above is based on the information that the CS has provided to the Burlington Police Department Narcotics Unit. This involves the CS providing information about drug sales. On 2 occasions, the CS for the Burlington Police Department was searched by law enforcement and found not to be in possession of any drugs, paraphernalia, or large sums of money. The CS then arranged a drug transaction at the request of investigators. The CS was kept under surveillance as they traveled to the pre-determined meet location and performed a drug transaction. The transactions were completed and or arranged by the described target, Ayub Mohamud (DOB: [redacted]). The CS then traveled back to the predetermined meet location to meet investigators, where it provided investigators the purchased "crack" cocaine. The CS was again searched and found not to be in possession of any drugs, paraphernalia, or large sums of money. Based on the above actions, I believe that the information the CS has provided to investigators is truthful and reliable.

38. This investigation has revealed that 220 Riverside Ave. Unit C8, in Burlington, VT is the residence of Mohamud. As previously stated in paragraphs 10 and 11, I know from both training and experience that drug traffickers will keep contraband and profits from drug sales within their residences.

39. Based on the above listed information in this affidavit, I am requesting the Honorable Court to grant me this KNOCK AND ANNOUNCE search warrant to search the residence of 220 Riverside Avenue Unit C8, in Burlington, VT for evidence of the crimes of Sale/Possession of Cocaine.

Dated at Burlington, Feb. 5th, 2020.

**AFFIANT**  344

At Burlington the 5th day of February, 2020, **Detective D. Bowers** personally appeared before me and made oath to the truth of the foregoing.

**JUDGE**

Time: 1:06 PM

<u>Case #:</u> <u>20BU001685</u>

<u>SEARCH WARRANT INVENTORY</u>

STATE OF VERMONT         } SS
COUNTY OF CHITTENDEN  }

At 220 Riverside Ave. Unit C8, in the City of Burlington, Chittenden County, on the 11th day of February, 2020, at approximately 1600 hours, I served the warrant on the residence of **220 Riverside Ave. Unit C8, Burlington, VT.** Attached is a detailed list of items seized during the search warrant:

Items seized:

- **SW Item #1** - Black Iphone 11 with clear case, Cell phone bears the number 802-399-8440 after it was called by Det. Tremblay during the execution of the warrant (Target Phone). Located on bed belonging to Ayub Mohamud in Bedroom #2.
- **SW Item #1A** - Vermont Driver ID belonging to Ayub Mohamud. Previously located in clear cell phone case of target phone.
- **SW Item #2** - Two Amphetamine/Dextroamphetamine extended release pills contained in an orange pill bottle, no prescription label. Located on the floor by the northern window in Bedroom #2.
- **SW Item #3** - SCCY Industries CPX-2 9MM, silver and red in color. No evident serial number visible. Located in drawer in closet of Bedroom #2. Contains one magazine, no ammunition.
- **SW Item #4** - five individually bagged corners containing white rock-like substance. Further contained in additional plastic bag and heat sealed envelope. One bag tested presumptive positive for cocaine by 323. Total weight: 17.9g. Located in drawer in closet, Bedroom #2.
- **SW Item #5** - White rock-like substance contained in two individually bagged corners, further contained in a clear plastic bag. Further contained in heat sealed envelope. One bag tested presumptive positive for cocaine by 323. Total Weight: 1.9g. Located in left pocket of jeans, Bedroom #2.
- **SW Item #6** - Green leafy substance consistent with marijuana contained in plastic bag. Further contained in heat sealed envelope. Total weight: 4.1g. Located in right pocket jeans, Bedroom #2.

- **SW Item #7** - $540 in US Currency located within right pocket of jeans within bedroom #2. $40 was determined to be BPD buy money and removed. $500 tagged.
- **SW Item #8** - 1/8 ounce of white walker kush suspected marijuana from "Wellness Connection." Located in drawer within the closet of bedroom #2
- **SW Item #9** - $80 in US currency. Located under the stove in the kitchen
- **SW Item #10** - black colored replica firearm located under the stove in the kitchen.

Attest:   Detective D. Bowers #344
          Burlington Police Department



# BURLINGTON POLICE DEPARTMENT
1 North Avenue
Burlington, Vermont 05401
INVENTORY OF PROPERTY SEIZED / RECEIVED

| | |
|---|---|
| **INCIDENT #:** | 20BU1685 |
| **DATE/TIME:** | Feb. 11, 2020 @ 1015 hours |
| **TO:** | AYUB MOHAMUD |
| **ADDRESS:** | 220 Riverside Ave #C8, Burlington, VT |
| **OFFICER:** | Bowers #344 |

| #: | DESCRIPTION: | LOCATION: | BY: | TIME: |
|---|---|---|---|---|
| 1 | CELL PHONE, 399-8440 | Lower bunk, BR 2 | 343 | 1040 |
| 2 | Unk. Pills in orange cont. | Floor by window, BR 2 | 271 | 1047 |
| 3 | 9mm Pistol | Drawer in closet, BR 2 | 323 | 1048 |
| 4 | Apparent crack in plastic bag | Drawer in closet, BR 2 | 323 | 1048 |
| 5 | Crack in plastic bag | Left pocket jeans, BR2 | 271 | 1050 |
| 6 | Marijuana in plastic bag | Right pocket jeans, BR2 | 271 | 1050 |
| 7 | US Currency | Right pocket jeans, BR2 | 271 | 1050 |
| 8 | Wellness Connection Marijuana | Drawer in closet, BR2 | 343 | 1055 |
| 9 | $80, 4 20's | Kitchen under oven | 308 | 1121 |
| 10 | Replica Gun, Black | Kitchen, in oven drawer | 308 | 1121 |

| | |
|---|---|
| **OFFICER NAME:** | BOWERS 344 |
| **OFFICER SIGNATURE:** | BS 344 |
| **WITNESS NAME:** | Trombly 323 |
| **WITNESS SIGNATURE:** | [signature] 323 |
| **RECEIVED BY:** | |
| **RECEIVED BY SIGNATURE:** | |

Updated 09/09