UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br> )<br>v.   )   Case No. 5:22-cr-13<br> )<br>AYUB MOHAMUD, )<br> )<br>Defendant.   ) | |

**ORDER ON MOTION TO SUPPRESS AND FOR *FRANKS* HEARING**
(Doc. 45)

Defendant Ayub Mohamud seeks a *Franks* hearing concerning an alleged false statement by omission in the affidavit submitted in support of a state court search warrant application.[1] He also seeks suppression of evidence seized from his home pursuant to the search warrant. The Government responds that the officer seeking the warrant made no false statement and that an evidentiary hearing is unnecessary. The court denies the motion for a *Franks* hearing and the motion to suppress. (Doc. 45).

## Legal Standard

Searches conducted pursuant to a warrant are presumed valid. "In certain circumstances, however, a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003) (citing *Franks v. Delaware*, 438 U.S. 154, 164–72 (1978)). The *Franks* doctrine requires a defendant to provide "allegations of deliberate falsehood or of reckless disregard for the truth." *Franks*, 438 U.S. at 171; *see also United States v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000) (defendant may challenge veracity of search

---

[1] The Defendant's name is spelled "Mohamud." It was misspelled in the indictment.

warrant "where the affidavit in support of the search warrant is alleged to contain deliberately or recklessly false or misleading information"). These must be supported by an offer of proof and affidavits of reliable witnesses. The false statement must be that of the officer who swears to the affidavit in support of the application for a warrant, not an informant or source. Finally, the false statement must be material in the sense that if it is excluded from consideration, "the remaining content is insufficient [to support a finding of probable cause.]" *Franks*, 438 U.S. at 172. Such a showing entitles the defendant to an evidentiary hearing.

## Facts

In this case, Defendant directs the court's attention to a difference between the affidavits submitted in support of the search warrant on February 5, 2020 and the subsequent probable cause affidavit submitted in support of state drug charges on February 13, 2020. The court will take a moment to compare the two affidavits, starting with the affidavit of probable cause. (Doc. 45-2.)

The probable cause affidavit recounts the history of the police investigation of Defendant's alleged sales of crack cocaine. In December 2019 and January 2020, Burlington police detectives met with a confidential source who stated that he or she was in a position to purchase crack cocaine from a young Black male who used the nickname "Jeff." Jeff was described as heavyset. He drove a Honda sedan. The confidential source did not know Jeff's official name.

"Jeff" was already known to the Burlington police. In December 2019, Detective Bowers (the affiant for both the search warrant affidavit and the probable cause affidavit) observed a hand-to-hand exchange between the confidential source and a young person driving a Honda sedan. This exchange occurred before the confidential source agreed to cooperate with

Burlington police. The Honda was registered to Fatima Mohamud, mother of Defendant as well as a younger son. The detective believed the younger son had conducted the sale. He later showed a picture of the younger son to the confidential source who identified him as the person who conducted the sale of crack cocaine in December.

As it turned out, both the detective and the confidential source were mistaken about which son was selling crack cocaine. Further investigation showed that it was defendant Ayub Mohamed who was the alleged seller. When the confidential source compared side-by-side photos of the two brothers, he or she identified Ayub as the seller. Burlington police then conducted three controlled buys of crack cocaine with Ayub. (Doc. 45-2 ¶¶ 10–31.) These occurred during the weeks of January 19, 26, and February 9, 2020. In the second of the three controlled buys, video surveillance footage confirmed that the seller was Ayub.

On February 5, 2020, Detective Bowers applied for a state search warrant. His supporting affidavit contained the same description of the investigation, including two of the three controlled buys, that later appears in the probable cause warrant. But it omitted any reference to the initial confusion about whether the driver of the Honda sedan at the time of the purchase observed by police in December 2019 was Ayub Mohamud or his younger brother. (Doc. 45-1.) It states only that "'Jeff' was later identified as Ayub Mohamud . . . through surveillance footage obtained by investigators during a controlled purchase." (Doc. 45-1 ¶ 18.)

The search occurred on February 11, 2020. Following the discovery of crack cocaine in Ayub Mohamud's bedroom closet, he was arrested on state drug charges. The detectives also found a handgun in the closet, leading to the federal indictment in this case.

## Analysis

Defendant argues that the omission of any reference in the search warrant affidavit to the initial confusion between the brothers satisfies the *Franks* requirement for evidence of a deliberate and material falsehood or reckless disregard for the truth. Defendant contends that "[i]t will be critical to learn *why* Det. Bowers came to believe that he had misidentified the target of the investigation as [the younger brother] . . . [and] *when* Det. Bowers and the CS switched the identity of the suspect . . . ." (Doc. 45-4 at 5.) Defendant also seeks to know "how many times the CS and Det. Bowers identified "Jeff" as [the younger brother] and all the circumstances of those identifications." (*Id.*)

The Government responds that there is no evidence that Detective Bowers misled the state court in obtaining the search warrant. In the Government's view, the omission is immaterial since even if this information were incorporated into the search warrant affidavit, the two controlled buys conducted prior to the date of the affidavit would provide a sufficient basis to search Defendant's residence.

The *Franks* inquiry extends to both affirmative false statements and material omissions. *United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir. 1985). Omissions present a special problem since drafting an affidavit obviously requires the author to choose to include some facts and leave out others. "An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Awadallah*, 349 F.3d at 67–68 (quoting *United States v. Colkley*, 899 F.2d 297, 300–01 (4th Cir. 1990)). But as in the case of affirmative misrepresentations, the objecting party has the burden of proof by a preponderance of the evidence that the affidavit intentionally or recklessly omitted information that, if included in the affidavit, would have prevented a finding of probable cause. *See* 2 W. LaFave et al., Criminal

Procedure § 3.4(d) n.68 (4th ed. 2015) ("Similarly, 'for an omission to serve as the basis for a hearing under *Franks*, it must be such that its inclusion in the affidavit would defeat probable cause.'" (quoting *United States v. Spinosa*, 982 F.2d 620 (1st Cir. 1992))).

In applying the *Franks* standard, the court addresses both the question of intention and materiality. In this case, evidence of intention is wanting. The standard is subjective in the sense that the court must evaluate the state of mind of the affiant. The burden is on the defendant as the objecting party to provide sufficient evidence of an intent to deceive to justify an evidentiary hearing. Such evidence is frequently measured by the relative significance of the omission. Omission of important information may support an inference of purposeful or reckless action. *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991) ("Recklessness may be inferred where the omitted information was 'clearly critical' to the probable cause determination.")(citations omitted).

In this case, the omission of the early, mistaken identification of the younger brother as the suspect is not critical to the evidence supporting the search warrant. Rather, that evidence is found principally in the description of the first two controlled buys. By then both the confidential source and the police had identified Ayub Mohamud as the seller. The mistaken suspicion of the wrong brother was quickly corrected prior to the controlled buys. In the course of the second buy, the police made a further identification of Ayub as the seller, thereby justifying a search of his residence. While the incorrect suspicion of the younger brother may provide a basis for cross-examination of witnesses at trial, it is of little significance to the question of whether there was probable cause to search the defendant's residence. The controlled buys provided the principal evidence of probable cause to search. Even if the state court judge had been advised that law enforcement had previously suspected the defendant's

brother, she would still have had a sufficient basis for granting the warrant. Because the omission has little connection to the evidence of probable cause for the search, it provides no basis for an inference of an intent to deceive the state court judge.

The question of materiality is closely related. In the case of affirmative false statements, the court "gauge[s] materiality by a process of subtraction." *Awadallah*, 349 F.3d at 65. The opposite is true in the case of omission. Then the process is necessarily one of addition meaning that we add the omitted information back into the affidavit to determine whether there is still a basis for the finding of probable cause. In this case, we have an example close at hand in the separate probable cause affidavit filed in support of the state court drug charges. There the detective described the mistaken identity and its correction in detail. This fuller account changes little about the basis for probable cause to search. We learn that the person originally suspected of selling crack cocaine was the wrong brother and that both the detective who witnessed a hand-to-hand transaction and the buyer (who later became a confidential source) made the same mistake. The police soon realized their error and when shown photos of both brothers, the confidential source changed his identification as well.

Adding the information about the mistaken identification to the other evidence offered in support of the warrant does not reduce or compromise the evidence of probable cause to search. Ayub Mohamud remains the person identified by the police in the course of two controlled buys. This basis for the search of his home remains unchanged.

The court denies the motion for a *Franks* hearing because there has been no sufficient showing of evidence, direct or by inference, of a material omission from the probable cause affidavit or either an intent to deceive the court or reckless conduct. The court also denies the motion to suppress. The affidavit submitted to the state court judge in support of the application

for a search warrant contains sufficient evidence of wrongdoing to support a search of the defendant's home. As described above, this evidence includes an account of two controlled buys of crack cocaine by a confidential source from the defendant. These buys were conducted as part of a police investigation and were supervised by Burlington detectives. They provide evidence that Defendant was engaged in the sale of cocaine and that a search of his residence could provide additional evidence of criminal activity.

## Conclusion

For these reasons, the court DENIES the motion for a *Franks* hearing (Doc. 45). The motion to suppress (Doc. 45) is DENIED. The court GRANTS the motion to file a redacted response. (Doc. 52).

Dated at Rutland, in the District of Vermont, this 9th day of November, 2022.

                                                Geoffrey W. Crawford, Chief Judge
                                                United States District Court